# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

VICKIE L. GRAHAM,         )
         )
      **Plaintiff,**     )
   **v.**         )     **Case No. CIV-16-452-SPS**
         )
NANCY A. BERRYHILL,      )
**Acting Commissioner of the Social**  )
**Security Administration,**[1]      )
         )
     **Defendant.**    )

## OPINION AND ORDER

The claimant Vickie L. Graham requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]"  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on April 26, 1972, and was forty-three years old at the time of the administrative hearing (Tr. 35). She has a high school education and vocational training in medical coding and terminology, and has worked as a billing clerk, claims examiner, and patient scheduler (Tr. 49, 232). The claimant alleges she has been unable to work since August 20, 2013, due to a fractured spine, problems with her hands, and pain in her back, neck, and legs (Tr. 37, 231).

### Procedural History

On December 17, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Lantz McClain held an administrative hearing and determined the claimant was not disabled in a written decision dated December 7, 2015 (Tr. 13-22). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she should avoid work

above shoulder level and could frequently use her hands for repetitive tasks such as keyboarding (Tr. 16). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a claims examiner and patient scheduler, and alternatively because there was work she could perform in the national economy, *i. e.,* food and beverage order clerk, and electronics worker (Tr. 21-22).

## Review

The claimant contends that the ALJ failed to properly account for her non-severe mental impairments in formulating her RFC. More specifically, she asserts that the ALJ ignored probative evidence related to her mental impairments, summarized the mental health evidence without analysis, and did not consider the combined effects of all of her impairments at step four. She further claims that such errors negatively impacted the ALJ's analysis of her ability to perform the mental demands of her past relevant work as well as his hypothetical question to the VE. The Court agrees that the ALJ erred in his analysis of the claimant's non-severe impairments and his decision is not supported by substantial evidence.

The ALJ determined that the claimant had the severe impairments of status post injury to cervical spine with surgery, history of knee pain, and carpal tunnel syndrome, as well as the non-severe impairments of depression and anxiety (Tr. 15). The record reveals the claimant was involved in a motor vehicle accident on August 21, 2013, which caused a laminar fracture at C6, and a ligamentous injury resulting in instability at C6, C7 (Tr. 491-97). On August 23, 2013, she underwent a fusion at C5 to T1 with pedicle screw instrumentation (Tr. 491-97). The medical evidence related to the claimant's non-

severe mental impairments reveals that her primary care physician, Dr. Timothy Sanford, treated her for depression with anxiety from August 2012 through February 2014 (Tr. 539-71, 606-17). On examination, Dr. Sanford generally found the claimant had an appropriate mood and affect, and good insight and judgment, however, he did note her mood and affect were "depressed, flat" on January 10, 2013, and depressed on January 20, 2014 (Tr. 542, 547, 560, 565, 570, 610, 616). Additionally, Dr. Sanford treated the claimant for posttraumatic stress disorder in January and February 2014 (Tr. 606-17).

The claimant established care with Dr. Adel Malati on April 24, 2014 (Tr. 683-85). At this initial appointment, she denied psychologically-based symptoms, but indicated on a depression screening that she occasionally experienced: (i) loss of interest or pleasure in doing things; (ii) feeling down, depressed, or hopeless; (iii) trouble falling asleep or sleeping too much; (iv) feeling tired or having little energy; (v) poor appetite or overeating; (vi) feeling bad about herself or feeling a failure; and (vii) trouble concentrating (Tr. 684). Dr. Malati diagnosed the claimant with depression and anxiety disorder not otherwise specified on June 9, 2014 (Tr. 685). His mental status examinations of the claimant were consistently normal (Tr. 685, 688, 691, 694).

On May 26, 2014, the claimant presented to the Okmulgee Memorial Hospital Emergency Department and reported suicidal thoughts and that she had taken approximately fifteen benzodiazepine tablets two hours earlier (Tr. 649-72). A urine drug screen was negative for benzodiazepines, but was positive for opiates (Tr. 671). The claimant was subsequently transferred to Wagoner Community Hospital, where she received inpatient psychiatric care (Tr. 679-81). She was discharged on May 30, 2014,

with a bright mood, broad affect, no thoughts of suicide, and a Global Assessment of Functioning ("GAF") score of forty-five (Tr. 681).[3]

On March 21, 2014, a state reviewing physician (identified as "RC, Ph.D.") completed a Psychiatric Review Technique (Tr. 123-24). Dr. RC found that the claimant's mental impairments consisted of an affective disorder and anxiety disorder, and that she was mildly impaired in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 123). Dr. RC noted the claimant did not endorse any mental limitations on Section 20a of her Function Report, and that the Third Party Function Report reflected no difficulty with memory, concentration, understanding, following instructions, getting along with others, handling stress, or handling changes in her routine (Tr. 124). In an analysis of the evidence, Dr. RC stated the claimant's activities of daily living indicated no significant mental limitations other than driving, and therefore rated her mental impairments as non-severe (Tr. 124).

The claimant established care at CREOKS Behavioral Health Clinic on August 11, 2015 (Tr. 814-24). Her initial treatment plan revealed diagnoses of generalized anxiety disorder and recurrent depression, and a GAF score of thirty-one (Tr. 814).

In his written opinion at step two, the ALJ found that the claimant's depression and anxiety were non-severe because she had only mild restriction in the three areas of functional limitation, and no episodes of decompensation (Tr. 13). In support of these

---

[3]  The record contains only the first and last pages of the claimant's Psychiatric Discharge Summary from Wagoner Community Hospital.

findings, the ALJ noted the claimant prepared simple meals, did some household cleaning, helped care for her children, went shopping, visited with family on a daily basis, interacted well with her treating sources, watched television, read, and paid bills, and could count change and handle a savings account, but could not use a checkbook or money orders (Tr. 16). He also noted the claimant's brief hospitalization for depression, but found that she was quickly stabilized on medications (Tr. 16). At step four, the ALJ summarized some of the evidence with regard to the claimant's mental impairments, and gave the state agency physician's opinion great weight, but made no further findings related to the claimant's mental impairments (Tr.18-20).

The claimant alleges error with regard to her non-severe mental impairments. Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) *and* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant

has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because although the ALJ mentioned each impairment at step two, and summarized some of the mental health-related evidence at step four, the ALJ entirely failed to consider the "cumulative effect of claimant's impairments," at step four. *Langley*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. The Tenth Circuit has held that "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells v Colvin*, 727 F.3d 1061, 1068-69 (10th Cir. 2013). "To sum up, to the extent the ALJ relied on his finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis." *Wells*, 727 F.3d at 1069.

Because the ALJ failed to properly account for *all* the claimant's impairments at step four, the decision of the Commissioner is therefore reversed and the case remanded

to the ALJ for further analysis of all the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

### Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 13th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**